William W. TURNER, Appellant,

v.

Robert F. KENNEDY, Attorney General of the United States, et al., Appellees.

No. 18012.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 22, 1964.

Decided April 2, 1964.

Petition for Rehearing en Banc Denied May 20, 1964.

Mr. Vincent J. Fuller, Washington, D. C., with whom Mr. Edward Bennett Wil-liams, Washington, D. C., was on the brief, for appellant.

Mr. Stephen B. Swartz, of the bar of the Supreme Court of Minnesota, pro hac vice, by special leave of court, with whom Asst. Atty. Gen. John W. Douglas, Mr. David C. Acheson, U. S. Atty., and Mr. Alan S. Rosenthal, Atty. Dept. of Justice, were on the brief, for appellees.

Before WILBUR K. MILLER, FAHY and BASTIAN, Circuit Judges.

PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is ordered and adjudged by this court that the judgment of the District Court appealed from in this cause is hereby affirmed.

FAHY, Circuit Judge (dissenting).

5 U.S.C. § 652(d) provides:

"The right of persons employed in the civil service of the United States, either individually or collectively, to petition Congress, or any Member thereof, * * * shall not be denied or interfered with.[1] "

Appellant was separated from his position in the classified Civil Service following proceedings in the agency [2] and in the Civil Service Commission. These included appropriate hearings which eventuated in findings and conclusions of the Commission that statements made by appellant in letters to a Senator and a Member of the House of Representatives regarding his treatment in his position, and other personnel conditions in the agency, were false, irresponsible and unjustified, demonstrating his unsuitability for continued employment in and impair-ing the efficiency of the agency.

The case comes to us on appeal from the grant by the District Court of summary judgment for appellees, with denial of appellant's cross-motion for summary judgment. It must be considered that

1. 62 Stat. 356 (1948).

2. Federal Bureau of Investigation.

appellant, in moving for summary judgment, conceded arguendo that the letters referred to contained false and irresponsible statements which were not justified, and that they demonstrated his unsuitability for the position he held; for the decision by the trial court was made on the administrative record which included such findings by the Commission and this record was not challenged by petitioner.

It is appellant's position that by reason of Section 652(d) his separation from his position cannot rest upon proof of the falsity, irresponsibility and unjustifiability of his statements in petitions to Congress or a Member thereof. I appraise this position in light of the right to petition "for redress of grievances" guaranteed by the First Amendment.

I agree with the Commission that this right may be abused and is not absolute. It has been held that one who accepts employment in the Government also accepts curtailment of certain activities which he would be free to engage in were he to remain in private life, as illustrated by the Hatch Act. See United Public Workers of America (C.I.O) v. Mitchell, 330 U.S. 75, 95–104, 67 S.Ct. 556, 91 L.Ed. 754 (1947). But the Hatch Act is a limitation placed by Congress upon the activities of the employees covered by it, whereas Section 652(d), to the contrary, is a guaranty by Congress to Civil Service employees of a right, the exercise of which "shall not be denied or interfered with." It would deny or interfere with the right if a consequence of its exercise were deprivation of employment. Equally clear would the right be denied or interfered with if the petition must be limited to statements which subsequent hearings and proceedings may show to have been true, responsible and justified. I recognize that in many situations the question whether particular conduct falls within the protection of a legal right depends upon findings made in hearings and proceedings subsequent to the conduct; but where the right claimed is the

right to petition for redress of grievances the validity of its exercise cannot be made to depend upon a subsequent conclusion that the petition contained statements which were true, responsible and justified. Our District Court, speaking through Judge Holtzoff, stated in Steck v. Connally, 199 F.Supp. 104 (D.D.C. 1961),

"The Civil Service Act, 5 U.S.C.A. § 652, subsection (d), guarantees to all civil service employees individually and collectively, the right to petition Congress, or any member of Congress, or to furnish information to either House of Congress, or to any Committee or member thereof, free from any restriction or interference on the part of their superior officers.

"Subsection (c) of the same Section, explicitly provides that the presentation of any grievance or grievances to Congress or any member thereof, shall not constitute or be a cause for reduction in rank or compensation or removal of such person or group of persons from the service. This statute does not contemplate that the head of a Department may censor the contents of the petition or that he may dismiss the employee concerned therein, if he can prove that the statements contained in the petition are untrue."

The same reasoning applies to statements subsequently shown to have been irresponsible and unjustified.[3]

In urging otherwise appellees refer to remarks of Congressman Reilly during consideration by the House of the Bill which became the Act. In its then form it did not contain Section 652(d), but there was a provision which became Section 652(c), reading:

[T]he presenting by any person or groups of persons [in the postal service of the United States] of any grievance or grievances to the Con-

---

3. I do not decide, however, that the contents of a petition furnishing classified information or confidential information of a nature that is in the public interest not to disclose is privileged.

gress or any Member thereof shall not constitute or be cause for reduction in rank or compensation or re- . moval of such person or groups of persons from said service.

Congressman Reilly said that employees "would have to assume the responsibility for their acts in the event of making false or misleading charges that could not be borne out by evidence on investigation." 48 Cong.Rec. 4656.

The Bill was passed by the House and went to the Senate. In reporting the Bill the Senate Committee recommended deletion of what is now Section 652(c):

"[I]t is the view of the committee that all citizens have a constitutional right as such to present their grievances to Congress or Members thereof. But governmental employees occupy a position relative to the Government different from that of ordinary citizens. Upon questions of interest to them as citizens, governmental employees have a right to petition Congress direct. A different rule should prevail with regard to their presentation of grievances connected with their relation to the Government as employees. In that respect good discipline and the efficiency of service requires that they present their grievances through the proper administrative channels." S. Rep. 955, 62nd Cong., 2d Sess. 21 (1912).

This recommendation encountered strong opposition in the Senate. The tenor of the debate was that Government employees should have just as broad a right to petition as that possessed by ordinary citizens. Senator Ashurst stated: "I am opposed to the striking out of this provision from the House bill. Under the Constitution all men have the right freely to speak, peaceably to assemble, and petition the Government for a redress of grievances." He read into the record an article which in part stated: "This provision of the Constitution [the right of petition] does not make exception of citizens who happen to be in the service of the Government. It does not

say that all people may petition the Government, except, for instance, railway mail clerks." 48 Cong.Rec. 10671. Senator Reed also strongly opposed the Committee recommendation. He spoke of existing limitations on a government employee's right of petition, saying, "The effect of these rules, all taken together, has been that the employees of the Post Office Department have been fearful of their right to speak, even to the Congressman from their district, and to suggest to him needed changes. Mr. President, it will not do for Congress to permit the executive branch of this Government to deny it the sources of information which ought to be free and open to it, * * *" 48 Cong.Rec. 10674. Senator Williams stated: "It seems to me the freer we leave these people, the better. In fact, it is my idea that the freer we leave everybody, the better. These men have the right * * * if they wish to do so, to petition me for redress of grievances, or to petition you or anybody else, or any part of the Government, and I do not see why Congress should be 'putting its finger in the pie'." 48 Cong.Rec. 10803.

The Senate not only rejected its Committee's recommendation to strike the House language but added a new and broader section. See 48 Cong.Rec. 10804. This is now subsection (d). It applies to all Civil Service employees, not only to postal employees, and its language is more general than that used in the House Bill. This language was accepted by the House and the Bill became law. Clearly, Section 652(d) encompasses petitions with respect to personnel grievances.

When we turn to the light cast by the First Amendment the scope of the protection of Section 652(d) is also seen to be broad. See United States v. Cruikshank, 92 U.S. 542, 552, 23 L.Ed. 588 (1875); Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430 (1945); White v. Nicholls, 3 How. 266, 23 L.Ed. 588, 44 U.S. 266, 11 L.Ed. 591 (1845); Bridges v. California, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). Mr. Justice Story, in his Commentaries on the Constitution, Vol. II, § 1895, at 645, note

b (5th ed. 1891), wrote of the right of petition:

> "The statements made in petitions addressed to the proper authority, in a matter within its jurisdiction, are so far privileged that the petitioner is not liable, either civilly or criminally, for making them, though they prove to be untrue and injurious, unless he has made them maliciously."

Notwithstanding the fact that the Senate debate indicates that full First Amendment rights were to be extended to a Civil Service employee by Section 652 (d), perhaps his right is conditioned to a degree by the circumstance that he is in government service. Even so, we repeat, this can hardly require the content of his petition to be limited to statements which after investigation and hearing are found by the Commission to be true, responsible and justified. To require the valid exercise of the right to depend upon such a subsequent "audit," as it were, would inhibit its exercise so substantially as to take away its scope as gathered from the language of the section, its history, and its relationship to the First Amendment.

The recent decision of the Supreme Court in New York Times Co. v. Sullivan, 84 S.Ct. 770 (1964) fortifies the view I take. The *Times* case is concerned with the protection accorded by the First and Fourteenth Amendments to freedom of speech and of the press. The reasoning of the court, however, seems to me to be in good part applicable to our case. There, responsibility in a libel action for criticism of the conduct of public officials with respect to matters of public interest was involved. The present case may be said to involve criticism of more limited concern, contained in a petition and not in the press. But the right of petition as well as freedom of the press is protected by the First Amendment. And not only is Section 652(d) explicit as to the right of petition but it is intended to have as broad a coverage as the similar right guaranteed by the First Amendment. Moreover, the grievances which may be the subject of a petition under the section clearly include personnel grievances of the employee. Not only so, but the letters of appellant were petitions to the very officials specified in the statute as the intended recipients of such petitions—the "proper authority" of Mr. Justice Story's language above quoted.

I think the privilege, though not absolute, should be governed by the same standard as has been adopted by the Court in the *Times* case, namely, whether the statements were made with actual malice, that is, with knowledge that they were false or with reckless disregard of whether false or not.[4]

I realize this view gives rise to something of a paradox. Appellant has been found unsuitable for the position from which removed, yet I do not approve the removal in the proceedings before us. The explanation—indeed the justification —is that I think the means by which the removal was accomplished were not permissible under Section 652(d), read with the First Amendment. Even desirable ends are required to be achieved by lawful means. This is the sacrifice, if it may be so termed, required to maintain a rule of law, to which we are bound as the greater good. There may be instances where the error in means is insignificant in the full context of the matter and so may be overlooked; but if, as I think, appellant's removal was inconsistent with the protection accorded by Congress in Section 652(d), and by the First Amendment, the error of course cannot be said to be insignificant.

I would have the case remanded to the Commission for reconsideration under the standards I have indicated.

---

4. The Examining Office found that some of the statements were made without appellant having a reasonable basis therefor. Aside from the absence of such a Commission finding, it is not clear the Examining Office found that appellant himself knew he had no reasonable basis.